JEFF DWYER ET AL. *v.* WILLIAM F. FARRELL ET AL.
(11642)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

Argued February 2—decision released April 24, 1984

*Frederick P. Leaf,* special assistant corporation counsel, with whom were *Robert B. Teitelman,* law student intern, and, on the brief, *Charles G. Albom,* corporation counsel, for the appellants (defendants).

*Mark K. Benenson,* of the New York bar, with whom were *Donald W. O'Brien* and, on the brief, *Theodore N. Cox* and *Gregory J. Miller,* law student intern, for the appellees (plaintiffs).

SHEA, J. The plaintiffs, Jeff Dwyer and Warren Rosen, filed a verified complaint against the defendants, the city of New Haven, Mayor Biagio Dilieto, and police chief William F. Farrell, seeking declaratory and injunctive relief from the enforcement of § 18-12.1[1] of

---

[1] Section 18-12.1 of the New Haven Code of Ordinances provides:

"(a) No person shall advertise, sell, offer or expose for sale, or have in his possession with intent to sell, any pistol or revolver at retail unless such person shall have obtained:

(1) a federal license as a dealer in firearms or ammunition from the Bureau of Alcohol, Tobacco and Firearms;

(2) a state permit for the sale at retail of pistols and revolvers within the City of New Haven; and

(3) a state permit to engage in or conduct business as a seller within the State of Connecticut for the place of business in which such a sale of any

the New Haven Code of Ordinances, an ordinance regulating the sale at retail of pistols and revolvers. The trial court declared that the ordinance conflicts with and is, therefore, preempted by state law and enjoined the defendants from enforcing the ordinance. In their appeal, the defendants claim the trial court erred in declaring the ordinance preempted by state law.

The undisputed facts upon which the trial court relied in reaching its determination are as follows: On October 21, 1981, Dwyer, a resident of New Haven, filed an application for a state permit to sell a pistol he owned with the New Haven police department on a form prescribed by the commissioner of public safety.[2] He

pistol or revolver at retail shall occur from the State Tax Commissioner.

"(b) No sale of any pistol or revolver at retail by any person qualified to conduct such a sale under subsection (1) shall be conducted in a private dwelling, no part of which is open to the general public.

"(c) All sales of any pistol or revolver at retail by any person qualified to conduct such a sale under subsection (1) shall be conducted in premises located on property zoned as a Business District or in premises for which a variance has been granted for the sale of pistols or revolvers at retail.

"(d) For the purposes of this section:

(1) the term 'sale of any pistol or revolver at retail' means any transfer of title, exchange or barter, in any manner or by any means whatsoever, of any pistol or revolver for a consideration for any purpose other than resale in the regular course of business;

(2) the term 'pistol or revolver' means any firearm having a barrel less than twelve inches in length."

[2] General Statutes § 29-28, the state statute regulating the sale of handguns, provides: "No person shall advertise, sell, deliver, or offer or expose for sale or delivery, or have in his possession with intent to sell or deliver, any pistol or revolver at retail without having a permit therefor issued as hereinafter provided. The chief of police or, where there is no chief of police, the warden of the borough or the first selectman of the town, as the case may be, may, upon the application of any person, issue a permit in such form as may be prescribed by the commissioner of public safety for the sale at retail of pistols and revolvers within the jurisdiction of the authority issuing such permit. Upon the application of any person having a bona fide residence or place of business within the jurisdiction of any such authority or upon the application of any bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of

was informed in December by an officer in the police department that his application would not be considered until he fully complied with the New Haven ordinance regulating the sale of handguns and obtained a Federal Firearm Dealer's license, a permit from the state tax commissioner, and a variance from the local zoning board permitting him to sell a pistol in the residentially zoned area in which he lives. Dwyer was not engaged in the business of selling, buying or repairing firearms or ammunition, and, therefore, could not have obtained a federal license.[3] Furthermore, even if he had wished to engage in the business of dealing in firearms, he could not have done so in his private residence, an apartment in a six-family dwelling, no part of which was open to the public.[4]

any state or subdivision of the United States, such chief of police, warden or selectman may issue a permit to such person to carry a pistol or revolver within the jurisdiction of the authority issuing the same, provided such authority shall find that such applicant intends to make no use of any pistol or revolver which he may be permitted to carry thereunder other than a lawful use and that such person is a suitable person to receive such permit. Said commissioner may, upon application, issue, to any holder of any such permit, a permit to carry a pistol or revolver within the state. Each permit to carry any pistol or revolver shall be issued in triplicate and one of the copies issued by said commissioner shall be delivered to the person to whom issued, one shall be delivered forthwith to the authority issuing the local permit and one shall be retained by said commissioner, and the local authority issuing any such permit shall forthwith deliver one of such copies to the person to whom issued and one copy to said commissioner and shall retain one of such copies. No permit for carrying a pistol or revolver shall be issued to an alien under the provisions of this section."

[3] Paragraph (a)(1) of § 18-12.1 of the New Haven ordinance requires "a federal license as a dealer in firearms . . . ." The application for such a federal license provides, however, that: "[a] license will not be issued to an applicant who does not intend to actually engage in the firearms activity covered by the license applied for." The license is, therefore, restricted to those who are dealers in firearms. See 27 C.F.R. § 178.41. In commenting on the ordinance, its sponsor, Alderman Baldwin, stated: "This ordinance will prevent private individuals from engaging in retail sales but will allow them to sell at wholesale to legitimate dealers and to give weapons as gifts." Partial Journal of the Regular Meeting of Board of Aldermen, December 3, 1979, pp. 1831, 1832.

[4] In order to obtain a federal license, an applicant must comply with Fed-

On December 21, 1981, Rosen, also a resident of New Haven, filed an application for a permit to sell two pistols he owned. Rosen is engaged in the business of selling rifles, shotguns and ammunition,[5] and has both a federal firearm dealer's license and a state sales and use tax permit. He does not, however, sell handguns in the regular course of his business. His application for a permit to sell the handguns was denied because the premises at which he anticipated making the sale were not located in a business district, and a variance had not been granted permitting the sale of handguns at that location.

The defendants have conceded in their appeal that the police department erroneously interpreted the local ordinance to impose conditions for the issuance of a state permit sought pursuant to General Statutes § 29-28. It is undisputed, however, that even if the plaintiffs had been granted the state permit they still would have violated the local law if they had sold a handgun without complying with the New Haven ordinance. The defendants contend, nevertheless, that the ordinance does not conflict with statutes regulating the same subject matter, but is merely a more comprehensive local regulation which is consistent with state policy.

"There is attached to every ordinance, charter or resolution adopted by or affecting a municipality the implied condition that these must yield to the predominant power of the state when that power has been exercised. See 6 McQuillin [Municipal Corporations (3d Ed. Rev.)] § 21.32. This is in keeping with our law that

eral Regulations §§ 178.41 through 178.60. See 27 C.F.R. § 178.41. An applicant will be denied a license if the business premises is "[a] private dwelling, no part of which is open to the public." 27 C.F.R. § 178.11; see 27 C.F.R. § 178.47 (b) (5).

[5] Rosen is a full-time employee of a North Haven firearms manufacturer, but he also sells firearms and ammunition at his New Haven residence on Wednesday and Thursday nights.

a municipality, as a creature of the state 'can exercise only such powers as are expressly granted it or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation.' *New Haven Water Co.* v. *New Haven,* 152 Conn. 563, 566, 210 A.2d 449 (1965); see *Baker* v. *Norwalk,* 152 Conn. 312, 314, 206 A.2d 428 (1965); *Bredice* v. *Norwalk,* 152 Conn. 287, 292, 206 A.2d 433 (1964); *Ingham* v. *Brooks,* 95 Conn. 317, 328–29, 111 A. 209 (1920)." *Bencivenga* v. *Milford,* 183 Conn. 168, 173, 438 A.2d 1174 (1981).

"Where the state legislature has delegated to local government the right to deal with a particular field of regulation, the fact that a statute also regulates the same subject in less than full fashion does not, ipso facto, deprive the local government of the power to act in a more comprehensive, but not inconsistent, manner." *Aaron* v. *Conservation Commission,* 183 Conn. 532, 543, 441 A.2d 30 (1981); see also *P. X. Restaurant, Inc.* v. *Windsor,* 189 Conn. 153, 160–61, 454 A.2d 1258 (1983); *Connecticut Theatrical Corporation* v. *New Britain,* 147 Conn. 546, 552–53, 163 A.2d 548 (1960); *State* v. *Gordon,* 143 Conn. 698, 706, 125 A.2d 477 (1956). Whether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives. See *Aaron* v. *Conservation Commission,* supra, 542–44; *Connecticut Theatrical Corporation* v. *New Britain,* supra; see generally 6 McQuillin, Municipal Corporations (3d Ed. Rev.) § 21.35.

General Statutes §§ 29-28 through 29-38 clearly indicate a legislative intent "to protect the safety of the general public from individuals whose conduct has shown them to be lacking the essential character or temperament necessary to be entrusted with a weapon."

*Rabbitt* v. *Leonard,* 36 Conn. Sup. 108, 115–16, 413 A.2d 489 (1979). This legislative concern extends also to those who sell or deliver handguns. A person cannot advertise for sale or sell at retail a pistol or revolver without first obtaining a permit, issued only after the applicant has furnished information pertaining to his character and identity as prescribed by the commissioner of public safety. General Statutes §§ 29-28 and 29-28a. The handgun can be sold only in the "room, store or place described in the permit" and only to a purchaser personally known to the vendor or to a purchaser who provides evidence of his identity. General Statutes § 29-31. Furthermore, the vendor must record detailed information concerning the transaction, including the name of the purchaser, as well as the make, model, caliber and manufacturer's number of the pistol or revolver. Id. Failure to abide by these requirements subjects the transgressor to a monetary penalty and loss of liberty. General Statutes § 29-37; see *State* v. *Tirella,* 22 Conn. Sup. 25, 158 A.2d 602 (1959).

Although the statutory pattern evinces a legislative intent to regulate the flow of handgun sales and restrict the right to sell to those establishing the requisite qualifications, it is also clear that the General Assembly anticipated that persons meeting those qualifications, including those living in residential neighborhoods and nondealers, would be permitted to sell at retail a pistol or revolver. The legislature has struck the balance between totally unregulated sales and a complete ban on sales of handguns at retail.

In passing this handgun ordinance, the city has placed two important and substantial restrictions on the sale at retail of handguns which most residents of the city can never overcome: (1) that the seller be a dealer, and (2) that the sale occur on premises located in an area

zoned[6] as a business district.[7] By placing these restrictions on the sale of handguns, the ordinance effectively prohibits what the state statutes clearly permit. Nor do the defendants suggest any practical means available to either plaintiff of conforming to the ordinance.

A local ordinance is preempted by a state statute whenever the legislature has demonstrated an intent to occupy the entire field of regulation on the matter; *East Haven* v. *New Haven,* 159 Conn. 453, 469, 271 A.2d 110 (1970); or, as here, whenever the local ordinance irreconcilably conflicts with the statute. *Shelton* v. *City of Shelton,* 111 Conn. 433, 447, 150 A. 811 (1930). Accord, *Times Mirror Co.* v. *Division of Public Utility Control,* 192 Conn. 506, 511, 473 A.2d 768 (1984). The fact that a local ordinance does not expressly conflict with a statute enacted by the General Assembly will not save it when the legislative purpose in enacting the statute is frustrated by the ordinance. Here the New Haven ordinance removes an entire class of persons as potential sellers of handguns at retail. The state permit is rendered an illusory right because a casual seller residing in a nonbusiness zone can have no real hope of ever conforming to the local ordinance. In this respect the local ordinance conflicts with the legislative intent as expressed in the applicable statutes. The city has removed a right that the state permit bestows and thus has exceeded its powers.[8]

---

[6] The defendants make no claim that the ordinance is a zoning ordinance or that Rosen, who is a dealer in rifles and shotguns, but not pistols or revolvers, is in violation of a zoning law. Whether a municipality could pass a zoning ordinance restricting the sale of handguns to specific zones is a question not presently before us. Cf. *P. X. Restaurant, Inc.* v. *Windsor,* 189 Conn. 153, 160–61, 454 A.2d 1258 (1983).

[7] Counsel for the defendants admitted at oral argument that it would be practically impossible to establish the unreasonable hardship necessary to obtain a variance.

[8] In *Connecticut Theatrical Corporation* v. *New Britain,* 147 Conn. 546, 163 A.2d 548 (1960), a case relied upon by the defendants, the city required movie theater operators to post a police officer during every performance,

There is no error.

In this opinion the other judges concurred.

a requirement not imposed by the state agency. Id., 548–49. We upheld
the ordinance because the ordinance was consistent with the purposes of
the state regulations: promoting public safety. Unlike the present ordinance,
the New Britain ordinance could be complied with without undue hardship.
The New Haven ordinance imposes an insurmountable burden on a person
desiring to sell a pistol or revolver at retail. It is permissible to regulate
in a manner truly consistent with state law; it is quite another matter, how-
ever, to prohibit totally that which state law permits.