[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, National Amusements, Inc., appeals from a decision of defendant, East Hartford Planning Zoning Commission (hereinafter PZC). The PZC denied plaintiff's application for a special permit, site plan approval and flood hazard area development permit.
Plaintiff sought approval to renovate an existing theater CT Page 8103 facility located at Silver Lane and Forbes Street in East Hartford. Prior to the conclusion of the hearing, plaintiff obtained all necessary approvals from the East Hartford fire, police, health, and public works departments, building inspector, planner, engineer, attorney, inland wetlands commission and design review committee. Approval was also obtained from the State Traffic Commission and the State Department of Environmental Protection. Plaintiff's plans were endorsed by the East Hartford Chamber of Commerce and all abutting property owners. At the hearing, plaintiff submitted a petition in support from more than 500 individuals and 75 local businesses. Several local residents spoke against the plans at the hearing. The reasons given by the PZC for denial of the special permit were stated as follows:
[that granting the special permit]:
 1. . . . will not promote the health, safety and the general welfare of the nearby residents.
 2. . . . is likely to create traffic safety or congestion problems in this area of Applegate Lane and Silver Lane.
3. . . . [is not] in the best interest of the community.
 4. . . . will cause an overcrowding of the land and an undue concentration of population in this area.
Record Item 12, minutes, June 12, 1991, p. 1
The PZC voted 6-1 for denial of the special permit. It is difficult to discern the PZC vote on the flood hazard permit or the site plan. The PZC viewed the three applications as a whole. Although no specific fault was found with either of these permits, the consensus appeared to be that it would defy logic to deny the special permit while granting either of the others. The PZC concluded that they would "deny without prejudice" these two permits to allow plaintiff to reapply. There was no separate vote taken on the flood hazard permit as distinguished from the site plan, although, as noted, there is an indication that these permits were considered together. Id. pp. 10, 11, 15, 16.
The decision of the PZC was published in accordance with applicable law. Plaintiff timely filed the present appeal pursuant to 8-8 General Statutes. Plaintiff is aggrieved as owner of the property for which the permits were sought. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, CT Page 8104 308, 592 A.2d 953 (1991).
After filing the appeal, plaintiff moved to supplement the record. Plaintiff sought, in part, to produce evidence that the PZC's subsequent favorable action on a special permit in an area near plaintiff's property demonstrated that the PZC acted arbitrarily on plaintiff's application. That portion of plaintiff's motion was denied. That part of the motion which sought to introduce "board graphics" used at the public hearing was granted, and said items were presented and used at the hearing on the appeal. In addition, plaintiff's motion for view was denied.
"The court's function in considering an appeal from a zoning authority is limited to a determination of whether the board had acted illegally, arbitrarily or in abuse of the discretion vested in it." Tazza v. Planning Zoning Commission, 164 Conn. 187, 191, 319 A.2d 393 (1972). "The burden of showing that the board acted without sufficient evidence, illegally or arbitrarily, or in abuse of its discretion [is] on the plaintiffs." Welch v. Zoning Board of Appeals, 158 Conn. 208, 216, 257 A.2d 795 (1969).
Almost all discussion at the hearing centered on the issue of traffic. The court indicated to counsel at the hearing on this appeal that it appeared from the record that the PZC would have given approval for all permits absent its concerns about traffic. Counsel agreed with this assessment. Thus, it is the conclusion of this court that all reasons given for the decision concerned the issue of traffic as it related to the special permit.
As noted, the record discloses that the PZC found no fault with either the site plan or the flood hazard permit.[1] The real issue here is the special permit. The plaintiff claims, in part, that the PZC should have granted the special permit as it satisfied all technical criteria. In considering this claim, it is helpful to distinguish between site plans and special permits. In ruling on site plans and special permits, a local authority acts in an administrative capacity. Wasicki v. Zoning Board, 163 Conn. 166, 171, 302 A.2d 276 (1972) (site plans); Double I Limited Partnership v. Planning Zoning Commission,218 Conn. 65, 72, 588 A.2d 624 (1991) (special permits). Nevertheless, there are differences between site plans and special permits vis a vis the discretion of the local authority.
 When an agency undertakes consideration of a site plan application, it has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated into the site plan CT Page 8105 regulations by reference. Allied Plywood, Inc. v. Planning Zoning Commission, 2 Conn. App. 506, 512, 480 A.2d 612 (1984). Under General statutes 8-3 (g), `a site plan may be modified or denied only if it fails to comply with requirements already set forth in the regulations.'
Barberino Realty Development Corp. v. Planning Zoning Commission, 25 Conn. App., 292, 397 ___ A.2d ___ (1991). Thus, discretion in reviewing site plans is strictly limited. This is not the case in reviewing special permits.
A zoning authority has wider discretion in reviewing a special permit.
 When deciding whether the granting of a special permit is appropriate, a zoning authority must determine whether: (1) the applicant's proposed use is permitted in the regulations; (2) the standards and the relevant zoning regulations are satisfied; and (3) the conditions necessary to protect public health, safety, convenience and property values can be established. See General Statutes Sec. 8-2.
Barberino, supra, 396.
Citing Cameo Park Homes, Inc. v. Planning Zoning Commission, 150 Conn. 672, 192 A.2d 886 (1963), the court in Whisper Wind Development v. Middlefield Planning Zoning Commission, et al, 7 CSCR 647 (June 8, 1992) summarizes the law on the differences between site plans and special permits. This court agrees with Whisper Wind insofar as it interprets Cameo to conclude that even where the applicant has complied with all technical requirements of the proposed use, a zoning authority may deny a special permit based on general considerations found in the applicable regulations. In the present case, the PZC based its decision specifically on traffic in addition to the general provisions of the regulations.
The subject property is in a B-1 business zone with the exception of a small portion which is zoned R-3. Under the regulations, theaters are a special permit use in the B-1 zone. Regulations 422.9, p. 68. This use is allowed ". . . subject to the general provisions of Article II." Regulations 422, p. 66. The "general provisions" of Article II applicable to special permits are set forth in the Regulations of the Town of East Hartford in Section 232:
232.1 Special permits shall be granted only where the CT Page 8106 Planning and Zoning Commission finds that the proposed use or the proposed extension or alteration of an existing use is in accord with the public interest, convenience, and welfare after taking into account, where appropriate:
 a. The nature of the proposed site, including its size and shape and the proposed size, shape and arrangements of structures.
 b. The resulting traffic patterns and adequacy of proposed off-street parking and loading.
 c. The nature of the surrounding area and the extent to which the proposed use or feature will be in harmony with the surrounding area.
 d. The proximity of dwellings, churches, schools, public buildings, and other places of public gatherings.
e. All standards contained in these Regulations.
 f. The Plan of Development for the Town of East Hartford and other expressions of the purpose and intent of these Regulations.
 g. The possibility of inclusion of passive solar access into multi-family dwelling proposals.
232.2 The Planning and Zoning Commissioner shall require that a plan of development for a proposed special permit use shall be submitted showing the location of all buildings, parking areas, traffic access and circulation, open spaces, landscaping and other pertinent information that may be necessary in the opinion of the Commission to determine that the proposed special permit use is in harmony with the intent of these Regulations and that such special permit use is not likely to create traffic safety or congestion problems, or cause depressed value or have other detrimental effects on properties in the surrounding neighborhood.
Regulations, pp. 14-15.
As noted, the record reflects that all four reasons given for the commission's decision were related to the issue of traffic. In addition to its claim that all technical requirements were met, plaintiff also claims that the provisions governing the state traffic commission, 14-298 et seq. General CT Page 8107 Statutes, preempt action by the local authority in this case. If plaintiff is correct, the PZC would have no discretion to deny the special permit based on traffic considerations. The PZC's main concern was the traffic on Silver Lane and Applegate Lane. Silver Lane is a state highway. Expansion of an existing facility adjacent to a state highway requires a permit pursuant to 14-311 General Statutes:
 (a) No person, firm, corporation, state agency or municipal agency or combination thereof shall build, expand, establish or operate any open air theater, shopping center or other development generating large volumes of traffic, having an exit or entrance on, or abutting or adjoining, any state highway or substantially affecting state highway traffic within this state until such person or agency has procured from the state traffic commission a certificate that the operation thereof will not imperil the safety of the public.
(Emphasis added).
In Compounce Association v. Southington Planning Zoning Commission, 4 Ct. Law Rptr. 10, p. 332, the court found that14-311 preempted a local authority from imposing conditions beyond those required by the state traffic commission to secure approval of a site plan. Although this court agrees with Compounce, that case does not support the proposition that14-311 preempts a local authority in all questions relating to traffic.[2] In Shelton v. Commissioner, 193 Conn. 506, 517,479 A.2d 208 (1984), the court notes that:
 [a]s we recently stated, `[a] local ordinance is preempted by a state statute whenever the legislature has demonstrated an intent to occupy the entire field of regulation on the matter; East Haven v. New Haven, 159 Conn. 453, 469, 271 A.2d 110 (1970); or, as here, whenever the local ordinance irreconcilably conflicts with the statute. Shelton v. City of Shelton, 111 Conn. 433, 447, 150 A. 811 (1930). Accord, Times Mirror Co. v. Division of Public Utility Control, 192 Conn. 506, 511, 473 A.2d 768 (1984).' Dwyer v. Farrell, 193 Conn. 7, 14, 475 A.2d 257 (1984). `Whether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives. See Aaron v. Conservation Commission, [183 Conn. 532, 542-44, 441 A.2d 30 (1981)]; Connecticut Theatrical Corporation v. New Britain, [147 Conn. 546, 552-53, CT Page 8108 163 A.2d 548 (1960)]; see generally 6 McQuillin, Municipal Corporations (3d Ed. Rev.) 21.35.' Dwyer v. Farrell, supra, 12.
The permit from the state traffic commission must certify that the proposed activity ". . . will not imperil the safety of the public." General Statutes 14-311 (a). Even assuming that14-311 preempts a local authority on questions of safety, it was not safety alone that concerned the commission. The record reveals that the primary concern was traffic congestion. The regulations specifically permit consideration of congestion. Regulations 232.2, p. 15. General Statutes 8-2 mandates that zoning regulations ". . . shall be designed to lessen congestion in the streets . . . ." "Congestion in the streets" has been defined as "density of traffic", "not the overall volume of daily or hourly traffic." Lathrop v. Planning 
Zoning Commission, 164 Conn. 215, 222, 319 A.2d 376 (1973). Aside from the question of preemption, it is also noted that local authorities are accorded much deference in questions of traffic. Zoning authorities have long been permitted ". . . to rely on their personal knowledge concerning matters readily within their competence, such as traffic congestion . . . ." Feinson v. Conservation Commission, 180 Conn. 412, 427,429 A.2d 910 (1980) (citations omitted).
In a zoning appeal, "[t]he question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." Calandro v. Zoning Commission, 176 Conn. 439, 440, 408 A.2d 229
(1979). This court is compelled to conclude that traffic congestion was a proper subject for the PZC, that the commissioners were entitled to rely on their personal knowledge, and that there is nothing in 14-311 General Statutes to preclude denial of the special permit.
The appeal is denied insofar as the special permit is concerned. However, the PZC has acted improperly in denying the site plan and flood hazard permit "without prejudice" after finding no deficiencies in either. When a local board could legally reach but one conclusion, a court is authorized to compel the proper action. Thorne v. Zoning Commission, 178 Conn. 198,206, 423 A.2d 861 (1979). The appeal is sustained as to the site plan and flood hazard permit, and the PZC hereby ordered to approve said items subject only to the procurement of a special permit.
Dunnell, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 8112