[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff appeals a decision of the defendant Board of Firearms Permit Examiners (Board) which sustained the revocation of his permit to sell handguns at retail by the chief of police of the city of Bridgeport. The police chief apparently acted pursuant to General Statutes 29-28, although the applicability of that statute is in contention in this appeal. The plaintiff appealed the revocation to the Board pursuant to 29-32b. The plaintiff appeals the Board's decision to this court pursuant to subsection (f) of 29-32b and4-183. For reasons set forth below, the case is remanded to the Board for further proceedings.
The essential facts are not in dispute. During 1991, the plaintiff held a permit to carry a handgun, which had been issued to him by local and state officials pursuant29-28. He also held a permit to sell handguns at retail, which had been issued to him by the Bridgeport chief of police pursuant to the same statute.
On December 17, 1991, the plaintiff was involved in an incident at a shopping mall in Trumbull during which he fired several shots from a pistol he was carrying. He did this immediately after discovering someone in the act CT Page 1812 of burglarizing his parked car. The burglar then began to flee in his own car, driving it at or in the direction of the plaintiff. The plaintiff testified that he fired the shots in self defense, although he aimed at the ground, not at the burglar. No one was hit by the shots or otherwise injured, nor was any property damaged. The Trumbull police arrested the plaintiff, charging him with reckless endangerment and unlawful discharge of a firearm, both misdemeanors.
The plaintiff applied for and was granted accelerated rehabilitation. At the conclusion of his probationary period, the criminal charges were dismissed by the court.
At some point while the criminal charges were pending against the plaintiff, and based on that incident, the state commissioner of public safety revoked the plaintiff's permit to carry a handgun. The commissioner acted pursuant to 29-32, and the plaintiff has not appealed that revocation.
Subsequent to the revocation of the permit to carry a handgun, the Bridgeport police became aware of the Trumbull shooting incident and the fact of the plaintiff's arrest. Based on those criminal charges, the chief of police of Bridgeport revoked the plaintiff's permit to sell handguns at retail. He issued the written revocation on February 8, 1993, apparently after the plaintiff had been granted accelerated rehabilitation but before the criminal charges had been dismissed.
The Board held a hearing on the plaintiff's appeal of the revocation of his permit to sell handguns. The plaintiff appeared, represented by counsel. The Bridgeport chief of police also testified, and the Board accepted in evidence, over the plaintiff's objection, an affidavit of a police officer who witnessed the shooting incident.
On April 30, 1993, the Board issued its decision affirming the revocation of the plaintiff's permit to sell handguns at retail. In its decision, the Board found that the plaintiff's firing his weapon in the parking lot was a "use of deadly force" and that it was CT Page 1813 "inappropriate" because "the circumstances did not indicate an imminent threat of great bodily harm." In its conclusions of law, the Board held that "suitability of the . . . license holder is the principle criterion for such license," and "(b)ased upon the evidence produced at the hearing, the appellant is an unsuitable person." The Board concluded that "there is just and proper cause for the revocation of a pistol (sic) permit."
The plaintiff raises five issues as the bases of his appeal to this court: (1) that the city of Bridgeport does not have the power to revoke a permit to sell handguns at retail; (2) that the "suitable person" standard was not the proper standard for the Board to follow in this case; (3) that the Board violated the plaintiff's due process rights in accepting or considering evidence related to the criminal charges because those charges had been dismissed and documents relating thereto should have been erased; (4) the revocation of the plaintiff's permit by the police chief without a hearing denied him due process; and (5) that the Board denied the plaintiff due process in that only three members of its seven members heard and decided the plaintiff's appeal.
The court has considered the plaintiff's claims as summarized above. With respect to number (3), above, the court has examined the record of the administrative hearing before the Board and concludes that the plaintiff has not demonstrated that any significant prejudice resulted from the Board's exposure to any documents related to the criminal charges, including the affidavit of the police officer. The court notes that all of the facts of the shooting incident that were included in the Board's decision were set forth in the plaintiff's own lengthy testimony. Furthermore, the Board was well aware that the plaintiff had not been convicted of any offense and that the charges had been dismissed.
With respect to number (4), above, the full hearing de novo by the Board satisfied the due process requirement that a hearing be held in connection with the suspension or revocation of a license or permit.
With respect to number (5), above, there is no CT Page 1814 requirement that all or a majority of the Board hear and decide an appeal under 29-32b. The court concludes that the procedure followed by the Board in that regard did not violate the plaintiff's due process rights.
With respect to the plaintiff's contention that the chief of police of Bridgeport did not have the authority to revoke his permit to sell handguns, he points out that there is no specific statutory provision in Title 29 of the general statutes granting a municipal official such authority. Section 29-28 provides that the chief of police may issue a permit to sell handguns at retail. That statute also provides that the chief of police may issue permits to carry handguns. Section 29-32, however, which provides that the chief of police may revoke a permit to carry handguns for cause, does not contain any provision specifically granting the chief the power to revoke a permit to sell. In fact, there is no statute which specifically provides for the revocation of a permit to sell handguns at retail, whether such revocation be by a local or state official. In support of his argument in this regard, the plaintiff cites Dwyer v. Farrell, 193 Conn. 7 (1984).
Although the plaintiff's arguments concerning the lack of specific statutory authority for revocation of a retail selling permit are compelling, the court concludes that they may not ultimately be sustained.
Dwyer v. Farrell, supra, is not on point. In that case, the court simply held that a municipality could not enact an ordinance which conflicted with the statutory provisions concerning handgun sales permits. In this case, neither the municipality nor its officials took any action which conflicted with state statutes. Rather, the police chief acted in an apparent statutory void. The issue which this case presents, therefore, is whether this statutory gap deprives a municipal official and the Board of the power to revoke a permit for cause.
As cited by the Board in its brief to this court, the Supreme Court in Dwyer v. Farrell, supra 12-13, noted that "General Statutes 29-28 through 29-38 clearly indicate a legislative intent to protect the safety of the general public from individuals whose conduct has CT Page 1815 shown them to be lacking the essential character or temperament necessary to be entrusted with a weapon . . . This legislative concern extends also to those who sell or deliver handguns." (Citation and internal quotations omitted.) This legislative intent would be wholly thwarted if the municipal official whom the statutes authorize to issue a gun sales permit could not, for good cause and subject to administrative and judicial review, revoke that permit. Indeed, under the plaintiff's reading of the statutory scheme, neither local nor state officials would have the power to revoke a gun sales permit; such permits are, he would argue, irrevocable once issued, regardless of any subsequent misconduct of the permittee. Such a result could only be described as bizarre, a result which this court must avoid. State v. Uretek, Inc. 207 Conn. 706, 719 (1988).
The more reasonable interpretation of the statutory scheme for the regulation of handgun sales permits is that the official whom the statute explicitly authorizes to issue such permits has the implicit authority to revoke them. "Indeed, municipal power to revoke a license or permit has been said to be a necessary consequence of the power to grant it." 9 McQuillan, Municipal Corporations (3d Ed. Rev.) 26.80. Any such revocation must, of course, comport with constitutional requirements of due process of law.
As indicated, General Statutes 29-28 grants the chief of police of a municipality the authority to issue permits to sell handguns at retail. It follows that the chief of police of Bridgeport did not exceed his authority in revoking the plaintiff's permit in this case.
The plaintiff's final contention on appeal is that the Board relied upon the wrong standard in determining whether to affirm the revocation. He argues that the "suitable person" standard is applicable only in cases involving the proposed revocation of a permit to carry a handgun. He points out that that term is used in 29-28
only in conjunction with the issuance of a permit to carry. He argues that the statute does not refer to any standard for the issuance of a permit to sell other than a requirement that the zoning regulations be observed. CT Page 1816
The plaintiff's argument concerning the proper criteria for maintaining a handgun sales permit is slightly off target. It is perfectly reasonable for the Board to determine whether an individual is "suitable" to have a permit. Indeed, that should be the essence of the Board's task, whether or not the statute so specifies. The real issues here, and in every such case, are whether the Board had substantial evidence to support its factual findings and whether its conclusions are reasonable and not arbitrary. It is in articulating these issues that the Board's decision is defective.
None of the facts found by the Board concerned the plaintiff's conduct of his retail handgun sales business. The incident which consumed most of the testimony at the Board hearing was the firing of the plaintiff's gun in the shopping mall. That incident was also the principal, if not the sole, basis of the Board's determination that the plaintiff is "an unsuitable person" to hold a permit to sell guns at retail in Bridgeport. It is undisputed, however, that the incident took place in a town outside Bridgeport, well removed from the plaintiff's place of business, and had nothing to do with the activity for which the permit was issued. Indeed, the Bridgeport police chief testified at the hearing that there was nothing about the plaintiff's firearm business that led to the revocation of his permit to conduct it.
In Wend v. Board of Firearms Permit Examiners, No. CV92 051 86 55 (Superior Court, J.D. of Hartford, April 26, 1993, Maloney, J.), this court, citing Smith's Appeal from County Commissioners, 65 Conn. 135 (1894), held as follows:
 The rule of Smith's Appeal imposes a special responsibility on agencies such as the Board, which must determine an individual's "suitability" to hold a license. As indicated by the Supreme Court of Errors, the personal views of the agency members are necessarily a factor in the decision, and similar facts and circumstances will have CT Page 1817 varying "probative force" in different cases. The agency, however, must avoid decisions which are "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. General Statutes 4-183 (j)(6). It is incumbent on the agency in such cases, therefore, to be reasonably precise in stating the basis of its conclusion that an individual is "unsuitable." Otherwise, the decision on its face will be susceptible to the interpretation that it is unduly subjective, an essentially arbitrary act.
In the present case, the Board set forth findings that would arguably support the conclusion that the plaintiff was not suitable to hold a permit to carry a handgun outside his home or place of business. These findings do not, however, clearly articulate why he is not a suitable person to have a permit to conduct a retail sales business. This distinction was specifically recognized by the Board during its hearing, as indicated by the remarks of the chairman that "there are actions, certain behavior, that might cause a person to lose a pistol permit, the pistol carrying permit, that would not at the same time be legitimate grounds for revoking a permit to sell." In response, however, the police chief, who was testifying at the time, merely reiterated the facts of the shooting incident and stated his opinion that the plaintiff acted in reckless disregard of the safety of others.
In order for the Board's decision in this case to avoid the interpretation that it is arbitrary in violation of 4-183, the decision must clearly state what it is that the plaintiff did that makes him an unsuitable person to hold a permit to sell handguns, as distinguished from a permit to carry such a weapon out among the public. Such specificity is particularly appropriate because the plaintiff's permit to carry a handgun has already been revoked on the basis of the CT Page 1818 shopping mall incident. If the Board concludes, as it may well do, that these facts support the revocation of a permit for an entirely different activity, it should state how and why.
As in the Wend case, supra, the Board's failure fully to articulate the basis of its decision substantially prejudices the plaintiff because he is unable to determine whether and to what extent the decision is arbitrary, capricious, or an abuse of discretion.
The appeal is sustained, and the case is remanded to the Board so that it may file a new decision consistent with the decision of this court.
MALONEY, J.