[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case the plaintiff, Raymond Hall, appeals from a decision of the Board of Firearms Permit Examiners ("Board") upholding the decision of the Commissioner of the Department of Public Safety ("Commissioner") revoking the plaintiff's permit to CT Page 1414-U carry pistols or revolvers pursuant to Conn. Gen. Stat. § 29-32. The Board originally voted to overturn the Commissioner's decision to revoke Mr. Hall's permit, however, after granting the Commissioner's motion for reconsideration and hearing additional evidence the Board affirmed the revocation by written decision dated July 31, 1995. The decision of the Board followed hearings conducted pursuant to the Uniform Administrative Procedures Act, Conn. Gen. Stat. § 4-166 et seq. in which the plaintiff was represented by counsel. This appeal was brought by the plaintiff under the provisions of Conn. Gen. Stat. Sec. 4-183.
FACTS
The evidence contained in the record indicates that the following events occurred:
On December 27, 1993, the plaintiff, Mr. Hall, was shooting his .45 caliber handgun at a friend's house in Harwinton. (R. p. 40). After leaving his friend's house in Harwinton he went directly to the American Legion Post #27 in Litchfield to attend a meeting. (R. p. 40)
Mr. Hall did not take the time to store his gun at home prior to arriving at the American Legion Hall despite the fact that he lived in Litchfield and that he had time to do so. (R. p. 34-35, 41 and 50).
When Mr. Hall entered the American Legion Hall he was carrying a concealed loaded .45 caliber pistol. (R. p. 41).
Mr. Hall knew that alcohol was always available at the American Legion Hall (R. p. 49). While waiting to attend a meeting at this hall, Mr. Hall admitted he drank at the bar. The meeting became very heated (R, p. 51), and Mr. Hall went back downstairs to the bar.
The bartender told Mr. Hall that he would not serve him if he was in possession of a firearm. Mr. Hall surrendered his loaded firearm to the bartender so that he could drink at the bar. (R. p. 45). Mr. Hall stayed at the bar drinking beer for approximately an hour. (R. p. 46). Mr. Hall then recovered possession of his loaded weapon from the bartender and got into his car and drove home. (R. p. 47).
A State Police investigation was launched into Mr. Hall's CT Page 1414-V conduct at the bar. On November 21, 1994, the State Police Special Licensing and Firearms Unit, on behalf of the Commissioner, notified Mr. Hall that his permit to carry pistols or revolvers was revoked as a result of the December 27, 1993 incident. (R. p. 24) Mr. Hall appealed the revocation to the Board of Firearms Permit Examiners and a hearing was held on June 21, 1995. (R. p. 28).
On June 21, 1995, after the hearing was over, at the regular session, the Board met and rendered its decision to reinstate Mr. Hall's pistol permit. (R. p. 61).
On June 22, 1995, Attorney Gerald Gore of the State Police made a motion for reconsideration. (R. pp. 64-65). The Board conducted a hearing on July 19, 1995 to decide whether to grant the State's motion for reconsideration. (R. pp. 84). The Board voted to permit the additional evidence to be heard and to reconsider their earlier decision. (R. p. 99).
The additional evidence revealed that on November 29, 1994, Mr. Hall was drinking with a friend and he threatened to commit suicide by shooting himself. His friend notified a hospital requesting crisis intervention. The hospital called Troop L and requested an investigation. (R. p. 100, 108, 113).
Upon arrival at Mr. Hall's home, the investigating trooper and a constable entered Mr. Hall's house after receiving no response. The trooper made contact with Mr. Hall and informed him why they were there and realizing that he was intoxicated, inquired about any weapons in the house. (R. p. 100). Mr. Hall denied that there were any weapons in the house (R. p. 100); however, the trooper observed a loaded .22 magnum pistol on the floor. (R. p. 100). The trooper also saw a loaded .45 caliber pistol on Mr. Hall's dresser. (R. p. 101). The trooper also recovered five loaded rifles in the house. (R. p. 101). The rifles were secured by the trooper and the handguns were taken to the evidence room at the troop and Mr. Hall was taken to the hospital. (R. p. 101)
Mr. Hall was released from the hospital once he sobered up. (R. p. 122)
At the June 21, 1995 hearing, Mr. Hall knew that the State police had confiscated his weapons. (R. p. 123).
I
CT Page 1414-W
In order to uphold the decision of the Board, it is not necessary that this court conclude that it would have reached the same conclusion as did the agency. A court in reviewing decisions of administrative agencies does not substitute its judgment for that of the agency. Conn. Gen. Stat. § 4-183 (j). The court need merely determine whether or not the record as a whole supports the action taken by the agency. Williams v. Liquor Control Commission,175 Conn. 409. 414 (1978).
Review of the decision of the Board will focus on the weight given to evidence presented at the time of the hearing. A decision will be upheld if its findings are supported by substantial evidence. Huck v. Inland Wetlands and Watercourses Agency,203 Conn. 525, 543 (1987).
 This so-called substantial evidence rule is similar to the "sufficiency of the evidence" standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can reasonably be inferred. . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. National Labor Relations Board v. Columbian Enameling Stamping Co., 306 U.S. 292, 299-300, 59 S.Ct. 501, 83 L.Ed. 660; See Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842; Consolo v. Federal Maritime Commission, 383 U.S. 607, 618-21, 86 S.Ct. 1018, 16 L.Ed.2d 131; see also McCormick, Evidence (2d Ed.) Sec. 352. (Emphasis added.)
Lawrence v. Koslowski, 171 Conn. 705, 713, 372 A.2d 110 (1976),cert. denied, 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977). Thus, if the Board's decision is supported by substantial evidence in the record as a whole and the reasonable inferences made from the record, their decision should be upheld.
There is substantial evidence in the record to support the Board's decision. Hearings before administrative agencies, although informal and conducted without regard to the strict rules of evidence, "must be conducted so as not to violate the fundamental rules of natural justice." Huck, 203 Conn. 536
(citations omitted). In this regard, the courts have consistently held that the "procedures required by the UAPA exceed the minimal CT Page 1414-X procedural safeguards mandated by the due process clause." Pet v.Department of Health Services, 207 Conn. 346, 356-57 (1988) (citations omitted). An administrative hearing does not have to match the model of a trial in court. It must, however, meet some modicum of orderly and fair procedure. See Pagano v. Board ofEducation, 4 Conn. App. 1, 9-10 (1985). Due process of law at administrative proceedings requires not only that there be due notice of the hearing, but that at the hearing, the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence. Huck,203 Conn. at 536.
Mr. Hall through his attorney had a meaningful opportunity to present his case to the Board at his hearing. He received prior notice of the hearing and presented evidence and cross examined witnesses. In addition, the plaintiff offered his testimony in rebuttal to that offered by the troopers. While Mr. Hall argues that there is insufficient evidence to support the Board's decision in the record, this is not the case. What Mr. Hall is arguing is that his testimony is more credible than that of the other witnesses who testified. Based upon the Board's decision to revoke his permit, they did not find his testimony credible. There were substantial differences between Mr. Hall's version of the events and the version told by the other witnesses. "The fact that the possibility exists that two inconsistent conclusions may be drawn from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Laufer v.Conservation Commission, 24 Conn. App. 708, 716 (1991). "In determining whether an administrative finding is supported by `substantial evidence', the reviewing court must defer to the agency's assessment of the credibility of witnesses." Miko v.Commission on Human Rights and Opportunities, 220 Conn. 192, 200
(1991). The evidence and testimony regarding the trooper's observations as well as the plaintiff's admission that he was intoxicated, that he talked about suicide and that he had several loaded guns scattered about the house reasonably supports the Board's findings that the plaintiff is not a suitable person to carry concealed firearms in public.
The determination to be made by the Board is simply whether the plaintiff is a "suitable person" to have a permit to carry pistols and revolvers pursuant to Conn. Gen. Stat. § 29-28. The determination of the existence of "just and proper cause" set forth in C.G.S. § 29-32b(b) is derivative of the question of whether CT Page 1414-Y permit holder is "suitable." Just and proper cause exists for the revocation of a permit to carry pistols or revolvers upon determination that the individual permittee is not a suitable person to hold such permit.
Just cause implies a reasonable ground for removal as distinguished from a frivolous or incompetent ground. Cassella v.Civil Service Commission, 202 Conn. 28, 37 (1987) (quoting Molinov. Board of Public Safety, 154 Conn. 368, 374-75, 255 A.2d 805
(1966). "The cause must be one which specifically relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights of and interests of the public." Obeda v. Board of Selectman,180 Conn. 521, 522-23 (1980). The question of whether cause assigned constitutes grounds for revocation, as a matter of law, is one for the judiciary. See e.g., Cassella v. Civil Service commission,202 Conn. at 37; Molino, 154 Conn. at 375.
Like "cause" the term "suitable person" has been held by your courts to have a definite meaning in the law. See State v. Vachon,140 Conn. 478, 485 (1953); Storace v. Mariano, 35 Conn. Sup. 28, 32
(1978).
 The word `suitable' as descriptive of an applicant for license under the statute, is insusceptible of any legal definition that wholly excludes the personal views of the tribunal authorized to determine the suitability of the applicant. A person is `suitable' who by reason of his character — his reputation in the community, his previous conduct as a licensee — is shown to be suited or adapted to the orderly conduct of a[n activity] which the law regards as so dangerous to public welfare that its transaction by any other than a carefully selected person duly licensed is made a criminal offense. It is patent that the adaptability of any person to such a[n activity] depends upon facts and circumstances that may be indicated but cannot be fully defined by law, whose probative force will differ in different cases, and must in each case depend largely upon the sound judgment of the selecting tribunal. (Emphasis added.)
Smith Appeal from County Commissioners, 65 Conn. 135, 138 at 529 (1884). The conduct exhibited by the plaintiff as determined from the record in the underlying proceeding provides the substantial evidence necessary to support the Board's affirmation of the CT Page 1414-Z Commissioner's decision to revoke Mr. Hall's permit.
As noted by plaintiff's counsel in the transcript,"Unfortunately for Mr. Hall, this is another incident that's forced him under the microscope but it's only two incidents; one of which [was] found, the initial one wasn't sufficient [to revoke his permit], but I guess if you start coupling these things together it may look bad. . . ."
Mr. Hall's conduct does not simply look bad, it was bad. It was his own poor judgment in two situations that caused other people to call the state police to investigate his conduct. Both incidents of poor judgment on the plaintiff's part involved alcohol and loaded firearms. The Board is not required to wait until Mr. Hall actually shoots himself or someone else in a fit of intoxicated rage before revoking his pistol permit. The duty to protect the public from persons not capable of handling the grave responsibility of carrying a concealed firearm in public is meaningless unless it can be exercised before others are injured. Therefore, an informed application of the statutory scheme, as described herein, to the facts present in the record, or which may reasonably be inferred therefrom, supports the conclusion that the Board acted properly in upholding the decision of the Commissioner of Public Safety revoking the plaintiff's permit to carry pistols or revolvers.
 II
The plaintiff claims that the State did not file its request for reconsideration with the Board within the prescribed time frame pursuant to Conn. Gen. Stat. § 4-181a. At the conclusion of the plaintiff's appeal, the Board held its regularly scheduled session on June 21, 1995 and made its decision to reinstate Mr. Hall's pistol permit that afternoon. (See affidavit of Dale C. Maclin, Exhibit A.) The decision of the Board in this case was not reduced to writing until July 5, 1995. However, pursuant to the Freedom of Information Act, specifically Conn. Gen. Stat. Sec. 1-21 (a)[1], the votes of each member of any public agency must be reduced in writing and made available for public inspection within forty-eight hours of the hearing. In Mr. Hall's case, the votes were recorded within that time frame and were available for public inspection on June 22, 1995. (See affidavit of Dale C. Maclin, Exhibit A.) Detective Michael Bochicchio of the Connecticut State Police Special Licensing and Firearms Unit requested the information about the Board's votes on June 22, 1995 and it was provided to him. (See affidavit of Dale C. Maclin, Exhibit A.) Although the Board's CT Page 1414-AA written decision (findings of fact and conclusions of law) was not available on June 22, the State Police were able to determine from the votes of each Board member that the Board as a whole voted in favor of restoring Mr. Hall's pistol permit.
On June 22, 1995, Attorney Gerald Gore drafted a motion for reconsideration on behalf of the State Police. The motion is dated June 22, 1995, but the certification dated to opposing counsel is dated June 23, 1995. (R. p. 65). Conn. Gen. Stat. § 4-181a(a)(1) states in relevant part that a request for reconsideration may be filed ". . .within fifteen days after the personal delivery or mailing of the final decision. . . ." (emphasis added). Thus, this statute sets a ceiling, a point in time past which no motion may be filed. It clearly permits a person to file a motion for reconsideration at any time prior to the expiration of the fifteen day time period. The State's motion was filed with the Board on June 27, 1995. (See affidavit of Dale C. Maclin, Exhibit A.) The Board's final decision was rendered on July 5, 1994. Thus the period within which to file a motion for reconsideration would not expire until July 21, 1995. Accordingly, the State's motion was timely because it was filed well before the expiration of the fifteen day time period. Furthermore, even if the State's motion was not timely, the Board has the authority to decide to reconsider its decision sua sponte within forty days after the personal delivery or mailing of the final decision. Conn. Gen. Stat. §4-181a(a)(2). Thus, the filing of a motion for reconsideration is not a jurisdictional prerequisite for the Board to reconsider a decision it has rendered.
 III
The plaintiff asserts that the Board failed to act on the State's motion for reconsideration within a timely fashion and therefore it was denied due process by operation of law. Conn. Gen. Stat. § 4-181a(1)(a) states in relevant part that "Within twenty-five days of the filing of the petition, the agency shall decide whether to reconsider the final decision. The failure of the agency to make that determination within twenty-five days of such filing shall constitute a denial of the petition." Filing means the actual delivery of the document to the proper officer. See Piscitello v. Boscarello, 113 Conn. 128, 131 (1939). Thus, the date on the heading of the State's motion or the date the document was mailed in the certification is not controlling in determining the date the document was filed. Rather, the records and files of the agency where the document was filed would be controlling. Id. CT Page 1414-BB at 132. The State's motion for reconsideration was not filed with the Board until June 27, 1995; (see affidavit of Dale C. Maclin, Exhibit A); therefore, the twenty-five day time frame did not expire until Monday, July 24, 1995. Due to the fact that the Board decided to reconsider its decision on July 19, 1995, the Board's decision was timely and the State's motion for reconsideration was not barred by operation of law. (R. pp. 85 et seq).
 IV
Conn. Gen. Stat. § 4-181a provides that the Board can reconsider a previous decision on several grounds: "(A) An error of fact or law should be corrected; (B) new evidence has been discovered which materially affects the merits of the case and which for good reason was not presented in the agency proceeding; or (C) other good cause for reconsideration has been shown." Although the State's motion on its face stated that the motion was being made on the grounds of new evidence, the Board has authority under this statute to reconsider its decision if any of the above grounds are stated in the motion. Clearly where Mr. Hall misled the Board into thinking that the State Police had illegally seized his firearm, creating an error of fact, the State had grounds to correct that error. At the second hearing Mr. Hall admits that he knew why the State Police were at his house, for the emergency committal procedure, and the fact that the police made arrangements to store his weapons with his friend was because he was intoxicated. (R. pp. 123-24). Therefore, he was not truthful under oath at the first hearing when asked if there were any "incidents" with the State Police which caused them to take his weapons. Furthermore, under exception "C" "other good cause" the State was justified in bringing to the Board's attention the events which occurred on November 21, 1994, which in and of themselves, would justify the revocation of his pistol permit.
Finally, the State Police testified at the second hearing that because Mr. Hall was not arrested on November 21, 1994, their criminal records search did not reveal the November 21, 1994 incident. The State Police are divided into different troops and departments which have different responsibilities and are located all over the state. The weapons unit is a separate department from Troop L and did not have the "incident reports" at its fingertips. The State Police also investigate thousands of incidents each year. While information on "criminal arrests" is readily available,"incident reports" are not. It was Mr. Hall's comments under oath that the State Police, for no apparent reason, confiscated his CT Page 1414-CC weapons that caused the weapons unit to do further investigation. The State Police had an obligation to bring this information to the Board for consideration as they deem appropriate. The plaintiff argues that because the weapons unit did not find the incident report prior to the first hearing the Board should "requir[e] the [State Police] Department to live with that conscious choice." (R. p. 23). The safety of the general public should not be endangered by allowing Mr. Hall to carry a concealed firearm in public with the State's authorization.
 V
As stated above, the Board complies with Conn. Gen. Stat. § 1-21 (a) which requires it to make available for public inspection, the vote of each member of the Board within forty-eight hours after the hearing. In Mr. Hall's case the Board voted on whether to restore his pistol permit immediately after the conclusion of his June 21, 1995 hearing. (See affidavit of Dale Maclin, Exhibit A.) The results of each Board members' vote was made available for public inspection the day after the Board voted on June 22, 1995. On June 22, 1995, Detective Michael Bochicchio of the State Police Weapons Unit obtained this information from Dale Maclin, the Board's fiscal administrative officer. (Id.) Ms. Maclin is not a Board member and does not vote on any cases heard by the Board. More importantly, the Board's decision had already been made. While the Board's written decision (findings of fact and conclusions of law) was not available on June 22, the State Police were able to determine from the vote of each Board member that the Board voted in favor of restoring Mr. Hall's permit. Therefore, the plaintiff's assertion that there was some inappropriate ex-parte communication with the Board prior to the decision being made is without merit.
 VI
The determination on the part of the Board, that the plaintiff is not a suitable person to have a permit to carry pistols or revolvers is necessarily a subjective one. Such a determination is formed, however, by the legislative intent underlying the General Statutes §§ 29-28 through 29-38. As summarized by our Supreme Court, that intent is "to protect the safety of the general public from individuals whose conduct has shown them to be lacking the essential character or temperament necessary to be entrusted with a weapon." (Emphasis added). Dwyer v. Farrell, 193 Conn. 7, 12,475 A.2d 257 (1984). The evidence in the record as a whole supports CT Page 1414-DD the Board's decision that Mr. Hall lacks the essential character or temperament necessary to be entrusted with a weapon in public. Two incidents involving poor judgment with respect to alcohol and loaded firearms is sufficient to warrant the revocation of Mr. Hall's pistol permit. For the foregoing reasons, the Court affirms the decision upholding the revocation of the plaintiff's license to carry pistols and revolvers by the Commissioner of the Department of Public Safety and therefore dismisses the appeal.
PICKETT, J.