People v Santana

2026 NY Slip Op 02172

April 9, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,

v

Gustavo Santana, Appellant.

Decided and Entered:April 9, 2026

CR-24-1394

Calendar Date: January 13, 2026

Before: Aarons, J.P., Pritzker, Ceresia, Powers And Mackey, JJ.

Steven M. Sharp, Albany, for appellant.

Mary Pat Donnelly, District Attorney, Troy (Michael Allain of counsel), for respondent.

[*1]

Ceresia, J.

Appeal from a judgment of the County Court of Rensselaer County (Debra Young, J.), rendered June 18, 2024, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the second degree.

Following a shooting on September 18, 2023 in the City of Troy, Rensselaer County, that caused the death of one person and injured another, defendant was indicted on charges of murder in the second degree (count 1), criminal possession of a weapon in the second degree (count 2) and assault in the first degree (count 3). Prior to trial, defendant sought dismissal of count 2 on the ground that the corresponding statute, Penal Law § 265.03 (3), is unconstitutional. County Court denied the motion, and a six-day jury trial ensued. At the close of proof, defendant requested, and received, a jury instruction on the defense of justification in connection with counts 1 and 3. The jury returned a verdict finding defendant not guilty of counts 1 and 3 but guilty of count 2. Defendant then renewed his motion to dismiss count 2, and the court again denied the motion. Thereafter, the court sentenced defendant to a prison term of 12 years, to be followed by five years of postrelease supervision. Defendant appeals.

We first address defendant's facial challenge to the constitutionality of Penal Law § 265.03 (3). This statute criminalizes the unlicensed possession of a loaded firearm outside of the home or place of business. Inasmuch as it is a defense to this charge that a defendant has a license to carry the firearm (see Penal Law § 265.20 [a] [3]), defendant contends that his conviction should be overturned because New York's firearm licensing scheme, contained in Penal Law § 400.00, has a flaw of constitutional dimension. Contrary to the People's assertion, a defendant has standing to bring such a challenge even if he or she never applied for a firearm license, as was the case here (see People v Johnson, ___ NY3d ___, ___, 2025 NY Slip Op 06528, *2 [Nov. 24, 2025]).

A party bringing a facial constitutional challenge "bears the substantial burden of demonstrating that in any degree and in every conceivable application, the law suffers wholesale constitutional impairment" (People v Emmanuel D., 238 AD3d 1068, 1070 [2d Dept 2025] [internal quotation marks and citation omitted], lv denied 44 NY3d 1011 [2025]; see People v Johnson, ___ NY3d at ___, 2025 NY Slip Op 06528, *3). "Legislative enactments carry an exceedingly strong presumption of constitutionality, and while this presumption is rebuttable, one undertaking that task carries a heavy burden of demonstrating unconstitutionality beyond a reasonable doubt" (Matter of Kelsey v Hochul, 221 AD3d 1236, 1237 [3d Dept 2023] [internal quotation marks and citations omitted], appeal dismissed 42 NY3d 960 [2024]; see Stefanik v Hochul, 43 NY3d 49, 57 [2024]).

Defendant takes issue with the "good moral character" requirement contained in the firearm licensing scheme. As set forth therein, "[n]o license shall [*2]be issued or renewed except for an applicant . . . of good moral character, which, for the purposes of this article, shall mean having the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others" (Penal Law § 400.00 [1] [b]). Defendant claims that this requirement places too much discretion in the hands of the licensing officer, and that it has no analogue in our nation's history of firearms regulation. In so arguing, defendant relies upon the Supreme Court of the United States' decision in New York State Rifle & Pistol Assn., Inc. v Bruen (597 US 1 [2022]), in which it was held that New York's requirement that a license applicant show "proper cause" to carry a concealed firearm violated the Second Amendment for these same reasons.

We reject defendant's arguments. With regard to the issue of discretion for licensing officials, when the Legislature amended New York's firearm licensing scheme in the wake of Bruen via the Concealed Carry Improvement Act (L 2022, ch 371), it essentially converted the scheme from a "may-issue" regime to a "shall-issue" regime by changing the framework from one where a licensing officer may, in his or her discretion, issue a license after determining that the applicant has a special need for self-defense to one where a license shall be issued so long as the applicant satisfies certain threshold eligibility requirements, including possessing good moral character. With that in mind, we note that Bruen itself cited with approval other states' shall-issue regimes that contain a similar threshold requirement to the one at issue here, such as in Delaware, which has a good moral character requirement (see Del Code Ann title 11, § 1441 [a] [2022]), as well as Connecticut and Rhode Island, which allow a licensing official to deny a license to candidates who are not "suitable" (Conn Gen Stat § 29-28 [b], [c]; Rhode Is Gen Laws § 11-47-11 [a]) defined in Connecticut as " 'individuals whose conduct has shown them to be lacking the essential character o[r] temperament necessary to be entrusted with a weapon' " (New York State Rifle & Pistol Assn., Inc. v Bruen, 597 US at 14 n 1, quoting Dwyer v Farrell, 193 Conn 7, 12, 475 A2d 257, 260 [1984]; see also Antonyuk v James, 120 F4th 941, 995 [2d Cir 2024], cert denied ___ US ___, 145 S Ct 1900 [2025] ["(o)f the forty-three licensing regimes that Bruen described as consistent with its analysis, more than a dozen confer some measure of discretion on licensing officers, with many using terms that are nearly identical to New York's character provision"]). Thus, Bruen does not support the proposition, nor do we find, that the good moral character requirement is susceptible to the type of "unchanneled discretion" on the part of licensing officials that violates the Second Amendment (New York State Rifle & Pistol Assn., Inc. v Bruen, 597 US at 79 [Kavanaugh, J., concurring]).

As for the question [*3]of whether the good moral character requirement is sufficiently grounded in history, subsequent to Bruen, the Supreme Court of the United States acknowledged that this country indeed has a historical tradition of disarming individuals who would cause harm to others, which is the precise aim of this requirement. That is, in United States v Rahimi (602 US 680 [2024]), the Court observed that, "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms" (id. at 690). "Such dangerousness is the core of New York's character requirement" (Antonyuk v James, 120 F4th at 985). Therefore, a good moral character provision "clearly fall[s] within the historical tradition of preventing dangerous individuals from carrying guns" (id.). For the above reasons, defendant's facial challenge fails (see id.; see generally People v Watts, 234 AD3d 620, 621 [1st Dept 2025], lv denied 43 NY3d 1059 [2025]).

Next, defendant contends that Penal Law § 265.03 (3) is unconstitutional as applied to him because he was carrying a firearm in public for the purpose of self-defense, which is protected by the Second Amendment (see District of Columbia v Heller, 554 US 570, 584 [2008]). However, this statute "does not effectuate a complete ban on the possession of handguns" outside the home but, rather, " 'prohibit[s] only unlicensed possession of handguns. A person who has a valid, applicable license for his or her handgun commits no crime' " (People v Tucker, 181 AD3d 103, 110 [4th Dept 2020], cert denied ___ US ___, 141 S Ct 566 [2020], quoting People v Hughes, 22 NY3d 44, 50 [2013]; see New York State Rifle & Pistol Assn., Inc. v Bruen at 79 [Kavanaugh, J., concurring] ["the Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense"]). Given that defendant's possession in this case was unlicensed and, as noted above, he has not pointed to any constitutionally deficient element of New York's licensing scheme, we reject his as-applied challenge.

Defendant also asserts that the sentencing scheme for varying degrees of weapon possession violates the Second Amendment by imposing harsher punishment on unlicensed possession outside of the home as opposed to inside it (compare Penal Law §§ 265.01 [1]; 265.01-b, with Penal Law § 265.03 [3]; see Penal Law §§ 70.00 [2] [e]; [3] [b]; 70.02 [1] [b]; [3] [b]; 70.15 [1]). We disagree. It is within the Legislature's purview as well as the boundaries of the Second Amendment to devise a licensing scheme for firearm possession (see New York State Rifle & Pistol Assn., Inc. v Bruen at 79 [Kavanaugh, J., concurring]). Thus, by the same token, the Legislature may criminalize unlicensed possession, and it is hardly controversial for the Legislature to "distinguish among the ills of society which require a criminal sanction, and prescribe, as it reasonably views them, punishments appropriate to each[*4]" (People v Broadie, 37 NY2d 100, 110 [1975], cert denied 423 US 950 [1975]). We therefore conclude that it was neither unreasonable nor unconstitutional for the Legislature to have determined that unlicensed possession of a weapon outside the home poses a greater risk of danger than it does inside the home, and set the respective penalties accordingly. In a similar vein, we reject defendant's Eighth Amendment claim. In our view, the allowable sentencing range of up to 15 years in prison does "not rise to the gross disproportionality violative of constitutional limitations," given the threat to public safety inherent in the possession of a loaded, unlicensed firearm outside the home (id. at 110-111; see People v Harris, 98 NY2d 452, 476 [2002]; People v Guity, 223 AD3d 598, 599 [1st Dept 2024], lv denied 41 NY3d 1002 [2024]).

Finally, with respect to defendant's challenge to the severity of his sentence, we deem it appropriate in this case to exercise our discretion and modify the sentence in the interest of justice. Recognizing that the jury acquitted defendant of the murder and assault charges, and noting defendant's lack of criminal history, acceptance of responsibility and showing of remorse, we reduce defendant's sentence to eight years in prison, to be followed by five years of postrelease supervision.

Aarons, J.P., Pritzker, Powers and Mackey, JJ., concur.

ORDERED that the judgment is modified, as a matter of discretion in the interest of justice, by reducing the sentence to a prison term of eight years, to be followed by five years of postrelease supervision; and, as so modified, affirmed.