People v Robinson (2026 NY Slip Op 00676)

People v Robinson

2026 NY Slip Op 00676

Decided on February 11, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 11, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CURRAN, J.P., BANNISTER, SMITH, OGDEN, AND DELCONTE, JJ.

61 KA 24-01452

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
vLORENZO ROBINSON, DEFENDANT-APPELLANT. 

JULIE CIANCA, PUBLIC DEFENDER, ROCHESTER (KRYSTIAN P. OPALINSKI OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MARTIN P. MCCARTHY, II, OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Victoria M. Argento, J.), rendered August 22, 2024. The judgment convicted defendant upon his plea of guilty of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed and the matter is remitted to Supreme Court, Monroe County, for proceedings pursuant to CPL 460.50 (5).
Memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]). We affirm.
Defendant contends that Supreme Court erred in refusing to suppress tangible evidence and statements that were obtained after the police unlawfully stopped and frisked him pursuant to an insufficiently corroborated anonymous 911 call. We reject that contention. Generally, "[a]n anonymous tip cannot provide reasonable suspicion to justify a seizure, except where that tip contains . . . information suggestive of criminal behavior" (People v Moore, 6 NY3d 496, 499 [2006]; see Florida v J.L., 529 US 266, 272 [2000]; People v William II, 98 NY2d 93, 99 [2002]) or is corroborated by "confirmatory observations of the police" (People v Argyris, 24 NY3d 1138, 1140 [2014], rearg denied 24 NY3d 1211 [2015], cert denied 577 US 1069 [2016]; see also People v Williams, 177 AD3d 1312, 1313 [4th Dept 2019]). "[T]he appropriate test" in evaluating whether there is reasonable suspicion to engage in a level three encounter based on an anonymous tip "is whether an anonymous tip is sufficiently reliable to provide reasonable suspicion under the totality of the circumstances" (People v Leighton R., — NY3d —, —, 2025 NY Slip Op 06534, *4 [2025] [emphasis added]). Further, although that "approach involves an analysis of the Aguilar-Spinelli reliability and basis of knowledge factors, allowance must be made in applying them for the lesser showing required to meet the reasonable suspicion standard" (id. [internal quotation marks omitted]; see Alabama v White, 496 US 325, 328-329 [1990]). In other words, strict adherence to Aguilar-Spinelli is mandatory only in the probable cause context and is not required to establish reasonable suspicion (see Leighton R., — NY3d at —, 2025 NY Slip Op 06534, *3-4). Indeed, "reasonable suspicion [may be] established by a 911 call from an anonymous individual and the confirmatory observations by the police of information provided by the caller that was noncriminal in nature" (id. at —, 2025 NY Slip Op 06534, *3; see Argyris, 24 NY3d at 1140-1141; People v Tantao, 178 AD3d 1391, 1393 [4th Dept 2019], lv denied 35 NY3d 945 [2020]).
Here, we conclude that the record at the suppression hearing with respect to the anonymous tip, and the steps taken by the police to corroborate it before stopping and frisking defendant, was sufficient to establish reasonable suspicion permitting the level three police encounter at issue here. Specifically, the police officer who first approached defendant during [*2]the encounter (first officer) testified that she received a dispatch report concerning a 911 call about a menacing in progress that involved a man brandishing a gun. The dispatcher provided that officer with a detailed description of, inter alia, the suspect's appearance—that he was a Black man with a white beard, wearing a baseball cap and a black jacket with reflectors. The dispatcher also indicated that the suspect was accompanied by another man who was wearing, inter alia, orange shoes. Within a minute of receiving the dispatch, the first officer and her partner responded to the scene, which was only a half mile away from their prior location. As they arrived, the dispatcher informed them that the suspect reportedly had a handgun in his front right pocket. The officers almost immediately encountered defendant and another man on the scene, both of whom precisely matched the description provided by the dispatcher. The officers thereupon stopped defendant, and the first officer began a pat-down frisk of his body, starting on the right side of his pants. During the brief pat-down, the first officer immediately discovered the gun, noting that its handle was sticking out of defendant's pocket.
Under those facts, i.e., where "[t]he police were able to corroborate [the] information [contained in the 911 call] within one minute of receiving the dispatch and [were] within [close proximity of] the reported location, [where] they observed a . . . suspect matching the description provided," the police had reasonable suspicion to engage in a level three encounter inasmuch as, here, "[t]he contemporaneous nature of the report is substantial . . . and weighs in favor of the [911] caller's veracity" (Leighton R., — NY3d at —, 2025 NY Slip Op 06534, *4 [emphasis added]). We further note that the 911 caller's report of a man brandishing a gun "necessarily [constituted a] claim[ of] personal knowledge of the crime" (id.). Under these circumstances, "[t]he police were duty-bound to investigate the radio report of [an armed menacing], and they could not ignore their own contemporaneous observation of [an individual] matching the caller's description and location" (id.).
Defendant also contends that Penal Law § 265.03 is unconstitutional in light of New York State Rifle & Pistol Assn., Inc. v Bruen (597 US 1 [2022]). We have rejected identical contentions in prior cases, holding that Bruen "had no impact on the constitutionality of New York State's criminal possession of a weapon statutes" (People v Mancuso, 225 AD3d 1151, 1153 [4th Dept 2024], lv denied 43 NY3d 964 [2025] [internal quotation marks omitted]; see People v Brinson, 240 AD3d 1376, 1378 [4th Dept 2025]), and we perceive no reason to reach a different conclusion here. Indeed, we note that the Court of Appeals recently held "that Bruen did not render the state's entire gun licensing scheme unconstitutional" inasmuch as the specific portion of the scheme that it invalidated is "severable" (People v Johnson, — NY3d —, —, 2025 NY Slip Op 06528, *3 [2025]).
Entered: February 11, 2026
Ann Dillon Flynn
Clerk of the Court