People v Jackson (2026 NY Slip Op 50274(U))

[*1]

People v Jackson

2026 NY Slip Op 50274(U)

Decided on March 9, 2026

Supreme Court, New York County

Newbauer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 9, 2026
Supreme Court, New York County

The People of the State of New York,

againstSean Jackson, Defendant.

Ind. No. 71846-2025

Victoria Notaro, Assistant District Attorney, Of Counsel to Alvin L. Bragg, Jr., Manhattan District Attorney's OfficeJahnavi Bhaskar, Esq., Neighborhood Defender Service of Harlem, for Defendant

April A. Newbauer, J.

Defendant Sean Jackson has filed a supplemental motion to dismiss the indictment charging him with two counts of criminal possession of a weapon in the second degree under Penal Law §265.03(3) & §265.03(1)(b). The People allege that on March 24, 2025, the defendant and his girlfriend began arguing inside a NYCHA building at 74 West 92nd Street when others joined them, and the interactions among various people continued in the street. Eventually, the People contend, the defendant shot in the direction of a group of people, striking several cars. The defense alleges that the defendant fired in self defense after being shot at first.
In this motion, the defendant challenges his prosecution for unlicensed gun possession outside the home or place of business because he claims the New York Licencing statute, known as the Concealed Carry Improvement Act ("CCIA") violates the Second Amendment of the United States Constitution. Further, the defendant argues that he could not obtain a license under the CCIA because of three unconstitutional aspects of the statute: 1) licenses are barred to persons between the ages of eighteen and twenty-one except if they are honorably discharged after military service; 2) mandatory licensing fees of approximately $463 prevent an indigent person such as himself from applying; and 3) the good moral character criteria are too vague. The prosecution maintains that the United State Supreme Court endorsed reasonable restrictions on gun possession in its recent decisions, that New York's licensing statute is constitutional and that the defendant would have been properly denied a license if he had applied for one, primarily because of his age.
The New York State Attorney General filed a letter dated February 3, 2026 electing not to intervene in this case, but noting that a brief outlining the Attorney General's position had been filed in the Court of Appeals in a previous case. See NY Executive Law §71; C.P.L.R. §1012 (b)(1).
Constitutional ArgumentThe defendant argues that the defendant's prosecution on two counts of criminal possession of a weapon in the second degree is unconstitutional under New York State Rifle & Pistol Assn. v. Bruen, 597 US 1 (2022). The defense asserts that the New York State Legislature [*2]enacted the Concealed Carry Improvement Act ("CCIA") following the Bruen decision "in a feigned" and failed attempt to comply with the Supreme Court's ruling. The People argue that the entire revised New York gun licensing statue is constitutional under Bruen and subsequent authority. 
As the People concede, the Court of Appeals clarified in People v. Johnson, —N.E.3d—, 2025 NY Slip Op 06528 (2025) that a defendant in a criminal proceeding may have standing to assert a constitutional challenge such as this, even when the defendant has not applied for a firearm license. The Court of Appeals also found that the challenge in Johnson failed because such a challenge must establish that a law is unconstitutional in every possible application. Id. at *7. The defense then argues that this portion of the Penal Law, along with other restrictions in § 400.00(1), are "unconstitutional unless the government can establish a historic tradition supporting them" and are overbroad and are so unconstitutional to render the entire statue invalid. In Johnson, the Court of Appeals rejected a similar broad challenge in the historical tradition framework, writing,
Finally, we reject the defendant's contention that the People were required to provide evidence that the entire licensing scheme is consistent with the Nation's historical tradition of firearm regulation. Although Bruen 's "historical tradition" framework would govern challenges to discrete provisions of any gun regulations (see e.g. Antonyuk, 120 F.4th at 987), the defendant's broad claim before us—that Bruen 's invalidation of the "proper cause" requirement effectively rendered the entire licensing scheme unconstitutional—does not implicate this inquiry, and the constitutionality of the other provisions of the licensing scheme is not before us.
People v. Johnson, — N.E.3d —, 2025 NY Slip Op 06528 (2025) at *7. Here, while the defense attacks the statute generally, the defense does not explain why the statute should be read as a whole and not as a sum of its parts, nor does the defendant attempt to show why most individual requirements in the licensing scheme are unconstitutional.
Licensing FeesIf defendant's only bar to licensure was his inability to pay the $364 licensing fee and $88 fingerprinting fee, he might have a viable "as applied" argument to challenge this restriction. The CCIA does not have any "carve out" for indigent applicants. There is no obvious mechanism to have the fees waived, although theoretically an applicant might appeal to an administrative tribunal or court for this purpose. Whether a fee charged for a license is "exorbitant," Bruen, 597 US at 38 n. 9, might very well depend on an individual applicant's financial ability and not simply on what is a reasonable cost to an average citizen. But as detailed below the monetary fees are only one impediment to this defendant's ability to obtain a license under the CCIA.
Licenses to Persons Aged Eighteen to Twenty-OneThe Court in People v. Johnson, —N.E.3d—, 2025 NY Slip Op 06528 (2025) at *7 , did not opine on whether the firearm prohibition against young adults aged eighteen to twenty-one is constitutional. In United States v. Rahimi, 602 US 680 (2024), however, a case subsequent to Bruen, the Supreme Court made it clear that there are permissible legislature imposed restrictions on weapons possession. The First Department has previously found the CCIA age restriction does not violate the Second Amendment. See People v. J.R., -AD3d-, 2026 NY Slip [*3]Op 01170 (2026), citing People v. Jhowalli S., -Ad3d-, 2026 Slip op 00320 (2026). See also, People v. Maldonado, 230 AD3d 1069 (1st Dept 2024).[FN1]
However, none of these decisions makes explicit why the age restrictions are constitutional, so some additional explanation is warranted.
As has been noted, Justice Alito's concurrence in Bruen, 142 S Ct at 2157-58, the Court's decision did not expand the "categories" of people who may lawfully possess a gun, and federal law generally prohibits possession of a handgun to minors and sale of handguns to eighteen to twenty-one year olds. See People v. Hidalgo, 80 Misc 3d 329 (Sup Ct Bx Co 2023). Cf. NRA v. Bondi, 133 Fth 1108 (11th Cir. 2025). As to the defendant's argument here, the court in Bruen merely resolved the question left open in District of Columbia v. Heller (554 US 570 (2008)): whether the same analysis in Heller applied to gun possession outside the home. Now that Bruen makes clear that the Second Amendment applies equally outside the home, courts must grapple with state and local restrictions on the categories of persons who may possess guns in public. 
Age restrictions pass muster under both an originalist test and under a modern understanding of the capacity of eighteen to twenty-one year olds to exercise the judgment necessary to make rational decisions about how and when to use firearms. Persons under twenty-one years were denominated "infants" in the Founding era and could not vote, serve on juries, or perform a variety of less fundamental tasks. In most cases nineteen to twenty-one year olds could not enter binding contracts and had status as a family members subject to the head of household. See S. Cornell, "Infants" and Arms Bearing in the Era of the Second Amendment," Yale Law & Policy Rev. (Oct 2021). Service in militias was akin to a draft, not a "right" to carry weapons. Young men aged eighteen to twenty-one served in the colonial militias under adult supervision, analogous to service in the modern military. In the Founding era, young men obtained arms through their guardians, who were held legally responsible for these minors' conduct. There is little if no evidence that minor militiamen were permitted to use their arms outside the confines of their militia service. See, M. Walsh & S. Cornell, Age Restrictions and the Right to Keep and Bear Arms, 108 Minn. L.Rev. 3049 (2024). Notably, the CCIA has an exception for eighteen to twenty-one year olds who have served in the military.
Aside from the debate about the application of the laws and mores of 1791, an analysis based on historical traditional traditions does not end in 1791. A modern Second Amendment analysis may permit greater restrictions on firearm purchase and possession than in 1791 to address unprecedented societal concerns or dramatic technological changes over time. See Bruen, 597 US at 27.[FN2]
The defense relies heavily on the discredited reasoning in Lara v. [*4]Commissioner of Pennsylvania State Police, 91 F4th 122 (3d Cir 2024), in which a Third Circuit panel found that because in the Founding era, Pennsylvania did not restrict eighteen to twenty-one year olds from keeping and bearing arms the courts now must follow along. After a petition for en banc review was denied,[FN3]
with a lengthy dissent prefiguring the Supreme Court's decision in United States v. Rahimi, 602 US 680 (2024), the Supreme Court vacated the Third Circuit judgment and remanded the case for further consideration in light of Rahimi.[FN4]
The Second Circuit in Antonyuk v. James, 120 F4th 941, 974 (2d Cr 2024), then explicitly rejected the reasoning in Lara:
We respectfully part ways with the Third Circuit, which held in Lara v. Commissioner Pennsylvania State Police, 91 F.4th 122, 134 (3d Cir. 2024), cert. granted, judgment vacated, 145 S. Ct. 369, 220 L. Ed. 2d 137, 2024 U.S. LEXIS 4283, 2024 WL 4486348 (U.S. Oct. 15, 2024), that "the Second Amendment should be understood according to its public meaning in 1791," and not 1868. The Lara majority invoked Bruen's guidance that "individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government." Id. at 133 (quoting Bruen, 597 U.S. at 37). The majority reasoned that if there is a conflict between the contemporaneous understandings of the right to bear arms at the time of ratification of the Second Amendment and that of the Fourteenth Amendment, "we must pick between the two timeframes." Id. at 134 n.14.While we recognize that evidence nearest to 1791 can differ from that nearest to 1868, such discrepancy does not mean that the right to keep and bear arms was calcified in either 1791 or 1868. Rather, 1791 and 1868 are both fertile ground, [**55] and the adjacent and intervening periods are likewise places in the historical record to seek evidence of our national tradition of firearms regulation.Legislatures have not always exercised their maximum constitutional regulatory authority, and this was as true in 1791 and 1868 as it is today. As Justice Roberts stated in US v. Rahimi, 602 US 680, 702 (2024), Second Amendment law is not "trapped in amber." Legislatures over time may respond to threats posed by excessively harmful arms with responsive and proportional legislation. See Bianchi v. Brown, 111 F.4th 438 911th Cir 2024). New York State did so by enacting a pistol licensing requirement in 1897. The Sullivan Act—the precursor of Penal Law §400.00— followed in 1911 (1911 N.Y.Law 443). The defense notes that the original version of the Sullivan Act permitted sixteen to twenty-one year olds to apply for licenses and that some rules applicable to young adults have changed over time, most recently voting expansion in the second half of the twentieth century. But the current law is both consistent with the Founding era and with a modern conception of young adult acquisition and use of firearms takes into account more sophisticated science on brain development. Many [*5]statutes and regulations now implicitly or explicitly recognize that modern neuroscience considers young adult brains as incompletely formed and incapable of measured thinking and responses to crisis events. The CCIA is one such statute. The criminal justice system as a whole is being challenged to take these same scientific findings into account in assessing the culpability and punishment of young people for criminal acts. For these reasons, the defendant's attack on the New York firearms statute must fail.
Moral Character RestrictionsIn Antonyuk v. James, 120 F.4th 941, 976980 (2024) (cert denied 145 S.Ct. 1900 (2025), the Second Circuit rejected a facial challenge to the "good moral character" provision in the CCIA—the successor statute to the one addressed in Bruen — along with other facial challenges. The First Department has now also found also found a challenge under Bruen to the "good moral character provision" enumerated in Penal Law § 400.00(1)(b) to be unavailing. People v. Rosavong, —NYS 3d—, 2026 NY Slip Op 88648 (2026). In light of the First Department ruling and the issue of age restrictions, this court sees no need to further address what, if any, constitutional infirmities may be present in the New York statute's criteria for determining adequate moral character for a firearm license.[FN5]

Penal Law 265.03(1)(b)Unlike the defendant in People v. Johnson, —N.E.3d—, 2025 NY Slip Op 06528 (2025), Jackson has been indicted for more than mere possession of gun without a license outside the his home or place of business. Jackson is also indicted for possessing a loaded firearm with intent to use it unlawfully against another (PL §265.03(1)(b)). The grand jury presentation in this case did not rest solely on the statutory gun presumption (PL §265.15(4)), but included direct and circumstantial evidence that the defendant used a firearm in this incident. The defendant has neither shown that this statute is unconstitutional, nor has he demonstrated that he was an "ordinary law-abiding citizen" who would have met the licensing requirements of the New York statute but for unconstitutional limitations. See New York State Rifle & Pistol Assn. v Bruen, 597 US 1, 31-32 (2022); People v. Johnson, —N.E.3d—, 2025 NY Slip Op 06528 (2025); People v. Rosavong, —NYS 3d—, 2026 NY Slip Op 88648 (2026).
The motion to dismiss the indictment as unconstitutional is denied.
This shall constitute the decision and order of the court.
E N T E RDated: March 9, 2026New York, New YorkApril A. NewbauerActing Supreme Court Justice

Footnotes

Footnote 1:The appellate decisions make very clear that any challenge to the statute must be preseved in the trial court level.

Footnote 2:Justice Antonin Scalia, the author of the Supreme Court's opinion in Heller, is widely considered to be the standard bearer for originalism. Justice Scalia almost certainly would have agreed with the expansion of the Heller doctrine to gun possession outside the home, but he may also have been willing to consider precedent and traditions reaching past the Founding Era as a practical matter. He is often quoted as saying, "I am an originalist, not a nut." See, e.g., M. Waldman, The Second Amendment, p.115 (2014).

Footnote 3:See Lara v. Commissioner of Pennsylvania State Police, 97 F4th 156 (3d Cir 2024). A lengthy dissent to the denial of en banc review prefigured the Supreme Court's ruling in United States v. Rahimi.

Footnote 4:The Third Circuit then reached the same conclusion as in its original opinion. Lara v. Evanchick, 125 F4th 428 (3d Cir. 2025). But see Commonwealth v. Williams, 341 A3d 144 (Pa Super Ct 2025).

Footnote 5:The defendant does not raise an "as applied" challenge to the character requirement. Given the breadth of criteria to be considered and the discretion of licensing officials under the CCIA, this presents a likely area for future litigation.